UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:25-CR-00122** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ROY TULLOS** | **MAG. JUDGE KAYLA MCCLUSKY** |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Indictment [Doc. No. 20] filed by Defendant Roy Tullos ("Tullos"). An Opposition [Doc. No. 27] was filed by the United States of America (the "Government"), and Tullos filed a Reply [Doc. No. 29].

For the reasons set forth below, Tullos' Motion is **DENIED**.

## I. BACKGROUND

On May 14, 2025, Roy Tullos was indicted on a three-count Indictment charging him with (1) Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), (2) Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), and (3) Possessing a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).[1] At the time of the offense, Tullos had been previously convicted of at least four felony convictions—two of which were drug-possession offenses, and one of which was an offense involving theft.[2]

---

[1] [Doc. No. 27, p. 2].

[2] [Id]. On November 26, 2007, Tullos was convicted of two counts of felony theft and sentenced to three years of imprisonment, as to each count. On November 21, 2011, Tullos was convicted of possession of diazepam and was sentenced to five years of imprisonment, suspended, three years of probation. His probation and subsequent parole were both revoked. On February 13, 2020, Tullos was convicted of obscenity and sentenced to two years of imprisonment. On April 21, 2021, Tullos was convicted of possession of suboxone and sentenced to two years of imprisonment.

## II.   LAW & ANALYSIS

Tullos claims that he is protected by the Second Amendment, and 18 U.S.C. § 922(g)(1) infringes upon his fundamental right to possess and use a firearm for personal protection and defense.[3] The statute prohibits any person who has been convicted of a felony to ship, transport, possess, or receive firearms or ammunition via interstate or foreign commerce. 18 U.S.C. § 922(g)(1). Tullos principally relies on the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024).[4] Tullos also points to *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which illustrates the framework lower courts must use for "as-applied" challenges to charges brought under § 922(g)(1).[5] In effect, Tullos argues that § 922(g)(1) is unconstitutional, as applied, unless the Government demonstrates that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to him.[6]

On the other hand, the Government opposes the Motion and alleges that Tullos is the type of "dangerous" person the Second Amendment excludes and applying § 922(g)(1) to him is squarely consistent with this Nation's historical tradition of firearm regulation.[7]

The issues have been briefed and the Court is prepared to rule.

---

[3] [Doc. No. 20-1, p. 3].
[4] [Id. at 1-3].
[5] [Id. at 2-3].
[6] [Id. at 4].
[7] [Doc. No. 27, p. 6].

### A. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. (12)(b)(1). Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense." *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024); *accord* Fed. R. Crim. P. 12(b)(3)(B)(v). A court may resolve such defects before trial when the motion presents a question of law. *See United States v. Fontenot,* 665 F.3d 640, 644 (5th Cir. 2011). The central issue here falls squarely within that ambit—whether applying § 922(g)(1) to Tullos comports with the principles underpinning our Nation's tradition of firearm regulation.

### B. The Second Amendment

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court read this language to "protect the right of law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 635 (2008).[8] However, the Court made clear that the right is not unlimited. *Id.* at 626.

The Court established a two-step framework for Second Amendment constitutional challenges in *Bruen*. 597 U.S. at 19–24. First, courts must consider

---

[8] Indeed, the right the Second Amendment sought to protect existed far before the ratification of the Bill of the Rights. Several provisions in the Bill of Rights were "understood as declaratory, inserted simply out of an abundance of caution to clarify pre-existing constitutional understandings." Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 28 (1998).

3

whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If so, "the Constitution presumptively protects that conduct," and the Government must bear the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*[9] However, the Government must only point to a "well-established and representative historical analogue, not a historical twin." *Id.* at 30. In assessing similarity, courts must look to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.

### C. The Constitutionality of § 922(g)(1) as Applied to Tullos

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear that felons are among "the people" protected by the Second Amendment. *Diaz*, 116 F. 4th at 466–67. Thus, the first part of the analysis stops there.

Next, the Court must consider whether any historical examples "impose a comparable burden on the right of armed self-defense" during the Second Amendment's ratification. *Bruen*, 597 U.S. at 27. Tullos' pertinent criminal history includes two felony offenses of drug possession, and one felony offense involving theft.[10] Thus, the Government may surpass its evidentiary burden by showing that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Tullos'. *Diaz*, 116 F. 4th at 467. Importantly, the historical

---

[9] The purpose of the two-step framework is straightforward: the Court sought to expressly reject any "judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important government interests." *Bruen*, 597 U.S. at 22 (citation modified); *cf. Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1261 (11th Cir. 2022) (Newsom, J., concurring) ("[U]nelected, unaccountable federal judges shouldn't make stuff up.").
[10] [Doc. No. 27, p. 2].

4

examples discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals that may pose a risk of violence or otherwise threaten public safety. *See id.* at 469.[11] In other words, the analogs demonstrate a "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. In this instance, the Government makes two points—but only one succeeds.

First, the Government states that Tullos' prior "felony convictions for Possession of Diazepam and for Possession of Suboxone permit firearm dispossession."[12] According to the Government, "[l]aws prohibiting convicted drug possessors and dealers from possessing guns are ubiquitous, longstanding, and near-universally supported in this country."[13] But *Bruen* assigns the Court to make that determination only after the Government proves it. Again, the evidentiary burden rests on the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. Simply saying that the regulation is historically justified will not cut it. Instead, the Government must "identify a well-established and representative historical *analogue*" and the "[e]vidence must be 'relevantly similar' to the challenged

---

[11] The Fifth Circuit in *Diaz* made at least three distinct and relevant points. First, the Fifth Circuit explained that historical laws which authorized capital punishment and estate forfeiture following felony convictions were "justified by the need to adequately punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Diaz*, 116 F. 4th at 469. Second, state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id*. Finally, the *Diaz* court considered the Supreme Court's finding in *Rahimi* that "going armed punished those who had menaced others with firearms because such actions disrupted the public order and led almost necessarily to actual violence." *Id*. at 470 (citation modified).
[12] [Doc. No. 27, p. 3].
[13] [Id. at 3-4].

5

law." *Diaz*, 116 F.4th at 467 (citing *Bruen*, 597 U.S. at 29–30). And "[s]imply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny." *Diaz*, 116 F.4th at 470.

The Government failed to offer any historical analogue or evidence to justify its regulation. Rather, the Government relies on tangential pre-*Bruen* caselaw and, what Tullos fairly calls, "social science talking points."[14] But that's not enough. As a result, the Government failed to provide sufficient evidence showing that the Nation has a longstanding tradition of disarming someone with a criminal history of drug possession analogous to Tullos.

The Government's second argument alleges that Tullos' prior felony offense of theft is "squarely foreclosed by *Diaz*" and "fit[s] neatly" within this Nation's historical tradition of firearm regulation.[15] Meanwhile, Tullos claims that since the Government "has not proffered any facts concerning" his theft conviction, it has failed to show that Tullos' specific offense is "analogous to [the] historical regulation for theft" discussed in *Diaz*.[16] Specially, Tullos claims that "*Diaz* concerned theft of a vehicle, which was compared to [historical laws addressing] theft of a horse."[17] And since the Government failed to specify Tullos' prior theft offense, Tullos thinks that *Diaz* does not squarely foreclose his claim.

However, Tullos fails to provide any reason to doubt that—after *Bruen* and *Diaz*—theft means theft. Though *Diaz* considered "the closest colonial-era analogue

---

[14] [Doc. No. 29, p. 4].
[15] [Doc. No. 27, p. 3].
[16] [Doc. No. 29, p. 3].
[17] [Id.].

6

to vehicle theft," the Fifth Circuit broadly concluded that "our country has a historical tradition of severely punishing people…who have been convicted of theft." 116 F.4th at 468–69. Likewise, the Fifth Circuit recently identified at least "three categories of offenses that doom a defendant's as-applied challenged to [§ 922(g)(1)]: theft, violence, and violating the terms of one's release by possessing arms while on parole." *United States v. Kimble*, No. 23-50874, 2025 WL 1793832, at *3 (5th Cir. June 30, 2025). Notably, neither *Diaz* nor *Kimble* offered carve-outs or exceptions regarding prior theft offenses, and this Court finds no reason to make one up. In other words, regardless of the facts underlying Tullos' prior felony theft offense, *Diaz* confirmed that "[i]mposing permanent disbarment as a punishment" for Tullos' prior theft offense falls "within our Nation's history and tradition" of firearm dispossession. 116 F.4th at 471.

Therefore, the Government has sufficiently carried its burden under *Bruen* to show a longstanding tradition of regulating someone with a criminal history analogous to Tullos.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Tullos' Motion [Doc. No. 20] is **DENIED**.

MONROE, LOUISIANA, this 10th day of July, 2025.

Terry A. Doughty
United States District Judge